STATE, *ex rel.* A. L. WILSON, Chairman, JOHN S. CURRY, G. M. ATWATER, HOPE HINES and W. P. WOODBERRY, as and constituting the Board of County Commissioners of Gadsden County, v. FRED P. CONE, J. M. LEE, and W. V. KNOTT, as and constituting the Board of Administration of the State.

178 So. 869.

En Banc.

Opinion Filed October 6, 1937.

*Gregory & Towles,* for Relators;

· *Cary D. Landis,* Attorney General, and *H. E. Carter, J. Compton French* and *W. P. Allen,* Assistant Attorneys General, and *J. Velma Keen* and *A. Frank O'Kelley, Jr.,* for Respondents.

*Pleus, Williams & Pleus,* as *Amici Curiae.*

Terrell, J.—This is a companion case to State of Florida, *ex rel.* O. J. Harrell, *et al.,* as Board of County Commissioners of Washington County, v. Fred P. Cone, J. M. Lee and W. V. Knott, *et al.,* as State Board of Administration, decided this date. There is this difference in the factual situation. In the latter case, it was shown that Washington County had been reimbursed under Chapter 15659, Acts of 1931, for all the funds it had advanced to the State for the construction of State roads therein and that the Act relied on, Chapter 17967, Acts of 1937, amended Chapter 15659, by requiring that henceforth all funds accruing to said county be placed to the credit of its Road and Bridge Fund for the repair and construction of roads in the county.

In the present case, it is shown that Gadsden County has not been reimbursed under Chapter 15659, Acts of 1931, for all the moneys it advanced to the State for the construction of State roads therein, but that there exists a surplus to the credit of the county over and above that required to pay interest and retirement on its indebtedness incurred in behalf of the State for the construction of State roads. The Act relied on in this case, Chapter 15890, Acts of 1933, amends Chapter 15659 by requiring that said surplus only be paid to the Board of County Commissioners of Gadsden County for "use in the construction and maintenance of public roads within such county or such other county purposes as said Board of County Commissioners may by resolution determine."

In our view, that part of Chapter 15890 which authorizes

the Board of County Commissioners to use any part of the surplus transferred to it for "such other county purpose as said Board of County Commissioners may by resolution determine" is invalid and cannot be enforced because it attempts to divert the proceeds of a State tax to a county purpose contrary to the purpose and intent of Chapter 15659, Acts of 1931, by which it was imposed. It is accordingly eliminated. In so far as allocated to the Board of County Commissioners for "use in the construction and maintenance of public roads within Gadsden County" the Act is good and enforceable because consistent with the purpose of the parent Act.

All other questions raised are similar to those presented in State of Florida, *ex rel*. O. J. Harrell, *et al.*, as Board of County Commissioners of Washington County, v. Fred P. Cone, J. M. Lee, W. V. Knott, *et al.*, as State Board of Administration, decided this date and are concluded by what we said in that case.

It follows that the motion to quash the alternative writ is denied and because this results in an equal division the motion for peremptory writ is denied.

It is so ordered.

WHITFIELD and CHAPMAN, J. J., concur.

ELLIS, C. J., dissents.

BROWN and BUFORD, J. J., dissent in part.

BUFORD, J. (dissenting in part and concurring in part).— I concur in the conclusion reached in the opinion prepared by Mr. Justice TERRELL and differentiate this case from the one treated in my dissenting opinion in the companion case of State of Florida, *ex rel*. O. J. Harrell, *et al.*, as and constituting the Board of County Commissioners of Washington County, Florida, *et al.*, v. Fred P. Cone, J. M. Lee and

W. V. Knott, as and constituting the Board of Administration of the State of Florida, etc., filed at this Term of Court, and other cases involving distribution to counties which have received all of, or more than that authorized by Chapter 15659, Acts of 1931.

The provisions of Chapter 15659, *supra,* contemplated that only that part of the money arising from the collection of the second gas tax which was required to reimburse each county respectively for roads constructed which were taken over by the State as a part of the State road system, or funds or bonds advanced by the county to the State Road Department to aid in the construction of such State roads was authorized to be placed in the "State Distribution Fund" and turned over to the State Treasurer as *ex officio* treasurer of the counties. See Sub-section (b) of Sec. 8, Chapter 15659, *supra.* Therefore, the only part of the second gas tax which was authorized to go into the possession or control of, or to be administered by the State Board of Administration, was that part of the fund which was directed to be paid over to the State Treasurer as *ex officio* county treasurer. See first paragraph of Sec. 9 of Chapter 15659, *supra,* which definitely so limits the application in the following language:

"All moneys provided for hereunder to be credited to the various counties of the State and so paid to the State Treasurer as *ex officio* county treasurer shall be administered by the Board of Administration, as provided by law."

All the remainder of the fund was definitely appropriated to the State Road License Fund to be expended by the State Road Department in the construction of State roads in the respective counties. See Sections 8 and 9, Chapter 15659, *supra.*

So the amount of the appropriation payable to or for the direct benefit of the counties, respectively, was limited to

the amount found and certified to be due each county respectively for "moneys contributed for the construction of State roads" as defined in the Act.

It follows that when the amount so found and certified to be due any county is shown to have been turned over to the State Treasurer as *ex officio* county treasurer, there then remains nothing more of the fund authorized to be administered by the State Board of Administration or to be turned over to such county. If any additional part of the second gas tax should be transmitted to the Board of County Commissioners or to the State Treasurer as *ex officio* county treasurer it would be without authority of law to be found in Chapter 15659, *supra*. A mere book entry in the office of the State Treasurer showing a transfer of funds to an account which transfer is not authorized by law does not effectuate a transfer of the funds so that the funds must follow the book entry and regardless of such erroneous book entry the funds will remain and be in the account where the law contemplates they shall be.

The records of the office of the State Treasurer (see financial statement attached to and made part of dissenting opinion in the case of State of Florida, *ex rel* Harrell, *et al.,* as Board of County Commissioners of Washington County, *et al.,* v. Fred P. Cone, *et al.,* as Board of Administration of the State of Florida, etc., filed at this Term) show that Gadsden County was certified to be due under the terms of Chapter 15659, *supra,* $535,738.50, of which there has been transmitted to the State Treasurer as *ex officio* county treasurer and by him paid to or for the benefit of Gadsden County $480,805.98, of which amount $359,-574.59 was paid over by him to the Board of County Commissioners and $121,231.39 applied to payment on bonded debt, that is bonds and interest and interest; and, in addition to this, there has been turned over to him as *ex officio*

county treasurer the sum of $8,559.28, which he has not yet transmitted either in payment of the bonded debt or to the County Commissioners.

Thus it is shown that there is a balance due Gadsden County to be returned "to or for it all moneys contributed for the construction of State roads" as provided in the Act, the sum of $54,932.52 and of that amount the sum of $8,-559.28 is now held by the State Board of Administration to the credit of road and bridge bonds for Gadsden County, which balance including that which has already come into the hands of the State Treasurer as *ex officio* county treasurer, and that which will come into his hands as such, is authorized under Section 9 of Chapter 15659, *supra,* to be administered by the State Board of Administration as provided by law.

The alternative writ commands the respondents to "instanter administer, as provided by law, all moneys provided for under the provisions of Chapter 15659, Laws of Florida, Acts of 1931, credited to Gadsden County, Florida, and so paid to the State Treasurer as *ex officio* county treasurer of Gadsden County, Florida, and to instanter pay over to the Board of County Commissioners of Gadsden County, Florida, all funds in the possession or under the control of said Board of Administration to the credit of Gadsden County, or allocated for use in Gadsden County, Florida, appropriated out of said State Roads Distribution Fund and paid to W. V. Knott, State Treasurer, as *ex officio* county treasurer of Gadsden County, Florida, in excess of the amounts ordered, and determined, to be retained by said Board of Administration by resolutions of the Board of County Commissioners of Gadsden County, Florida, heretofore adopted and hereinabove set out," or to show cause why they do not do so.

The resolution referred to appears to have been adopted.

pursuant to the provisions of Chapter 15890, Acts of 1933. This was a special Act applying only to Gadsden County and is invalid because of the feature mentioned by Mr. Justice TERRELL in the opinion prepared by him in this case and also because it is a special law affecting the jurisdiction and duties of public officers and contravenes Section 20, Article III, of the State Constitution.

In so far as the Relator seeks only to have the Comptroller draw his warrant for such surplus as may be available payable to Gadsden County under the provisions of Chapter 15659, *supra*, now in the hands of the State Board of Administration and to deliver the same to the Governor to be countersigned, they are within their legal rights, but they are entitled to no other or further relief in this regard. What that surplus may be is a matter to be determined by the State Board of Administration under the application of laws involved.

Much has been said in the argument of the several cases pending here involving the distribution of the second gas tax to several counties concerning the dire necessities of the several counties to have the distribution of the fund to be used by such counties as contended for by these several counties. Although that is a matter beyond the issues, it is a condition which arrests our attention and arouses our deep interest and gives us much concern, but I am impelled to say that while such condition is deplorable, the courts are, like the Legislature, without power to authorize money produced by collecting a State tax in the several counties of the State to be turned over to officers of one county, or even to officers of a particular county where an equal amount of the tax was collected to become a part of a county fund and be used for a county purpose, unless such application of State funds is sanctioned by the Constitution. Nor may such allocation be made, if otherwise sanctioned by the Con-

stitution, by a special or local legislative Act which has not been enacted as required by the Constitution.

To hold otherwise would mean to say that the Legislature could, without the constitutional provisions applicable to the enactment of special or local legislation having been complied with, enact a valid statute appropriating the entire proceeds of both the first and second gas tax to the road and bridge fund of one named county to be used by the County Commissioners of that county for constructing public roads in that county.

For the reasons herein stated, I concur in the judgment quashing the Comptroller's return in this case, while holding that his return is sufficient in other cases, but I think the alternative writ should be quashed, with leave to the Relators to so amend their said writ as to come within the provisions of Chapter 15659, *supra*.

ELLIS, C. J., and BROWN, J., concur.